UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

Jacqueline T. Floyd,

Plaintiff,

v.

SoFi Technologies, Inc.,

Defendant.

3:25-cv-873-MMH-SJH

## COMPLAINT

### I. JURISDICTION AND VENUE

1. This is an action for unlawful employment practices under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.

2. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this Court under 28 U.S.C. § 1391 because the acts and omissions giving rise to these claims occurred in Jacksonville, Florida, within the Middle District of Florida.

### II. PARTIES

4. Plaintiff Jacqueline T. Floyd is a resident of Pensacola, Florida.

5. Defendant SoFi Technologies, Inc. ("SoFi") is a Delaware corporation doing business in Florida and employing more than 500 employees.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff timely filed a Charge of Discrimination with the EEOC.
7. On May 13, 2025, Plaintiff received a Notice of Right to Sue from the EEOC.
8. This action is filed within 90 days of receipt of that notice.

## IV. FACTUAL ALLEGATIONS

9. Plaintiff began working for SoFi in February 2021 as an Investment Specialist earning approximately $90,000 annually.
10. Plaintiff is a Black woman with documented ADHD and anxiety disorders, conditions recognized as disabilities under the ADA.
11. In September 2022, Plaintiff disclosed her disability-related, FMLA-eligible absences to her manager. Instead of engaging in the interactive process or offering FMLA, her manager concealed the disclosure and proceeded toward termination.
12. Only when Plaintiff advocated for herself during a September 2022 termination meeting did HR begin the interactive process and extend FMLA rights in October 2022.
13. After FMLA approval, Plaintiff's manager immediately began discouraging its use, referring to it as a "free bank of time off," and creating a hostile environment that bullied her out of renewing in January 2023.
14. Plaintiff consistently met objective performance metrics prior to her disclosure and was recognized company-wide for strong performance.
15. After disclosing her disabilities, Plaintiff's Manager Rating dropped to "Needs Improvement" despite passing her scorecard metrics.
16. SoFi's agent scorecard tracks seven metrics, including phone handle time, chat handle time, tasks per hour, and NPS (Net Promoter Score).
17. NPS is inherently subjective and heavily influenced by recent unpopular system issues that were outside agents' control.

18. Scorecards from Q3 2023 show widespread red boxes across the team, proving that no agent met all seven metrics.
19. Despite this, on October 10, 2023, Plaintiff's manager issued a Final Written Warning, pre-drafted after the October 3, 2023 release of Q3 metrics, and targeted only Plaintiff for failing NPS.
20. The warning maliciously required that "Jackie is expected to meet all her metric goals moving forward" — an impossible standard no other employee was subjected to.
21. White colleagues with lower performance, missed multiple metrics, or engaged in serious misconduct were neither disciplined nor terminated.
22. Plaintiff's manager was overwhelmed by the administrative burden of intermittent FMLA and made it his mission to remove her from the company.
23. The manager concealed known system issues affecting call metrics and omitted evidence of ongoing email threads where Plaintiff reported these issues.
24. When Plaintiff sought a transfer, HR required her to reapply for FMLA before the transfer could proceed, buying her manager time to complete the performance-based termination process.
25. Plaintiff was terminated in January 2024.
26. As a result, Plaintiff's U5 reflects "Failed to Fulfill expectations of the role," damaging her career in the investment industry, where she had been a FINRA-registered principal.
27. Plaintiff remained unemployed from January 29, 2024, until May 27, 2025, when a job offer was rescinded after a background check revealed her termination and credit damage caused by loss of income.
28. Plaintiff now earns $54,000 as an insurance adjuster — far less than her prior salary.

# V. CLAIMS FOR RELIEF

## Count I – Race Discrimination (Title VII of the Civil Rights Act of 1964)

1. Plaintiff is a Black woman and a member of a protected class under Title VII.
2. Plaintiff was qualified for her position as an Investment Specialist and met or exceeded objective performance metrics before disclosing her disability.
3. Defendants disciplined and terminated Plaintiff under an unattainable "must meet all metrics" mandate that no other employee was required to meet, despite scorecards showing no agent could meet all seven metrics at once.
4. Similarly situated white colleagues with lower performance, missed metrics, and in some cases serious misconduct (including cyberstalking a client) were not disciplined and were promoted.
5. Defendants' stated reason for termination — alleged poor performance — is pretext for discrimination, as evidenced by the selective targeting, subjective downgrades, concealment of known system issues, and shifting explanations.
6. As a direct and proximate result, Plaintiff suffered lost wages, lost benefits, emotional distress, and diminished career opportunities.

## Count II – Disability Discrimination (Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.)

1. Plaintiff has documented disabilities — ADHD and anxiety disorders — which substantially limit major life activities and are recognized under the ADA.
2. Plaintiff disclosed her disabilities to her manager in September 2022.
3. After disclosure, Defendants altered her Manager Ratings from satisfactory to "Needs Improvement" despite her meeting objective metrics.
4. Defendants issued a Final Written Warning in October 2023 requiring her to meet all seven metrics moving forward, a standard known to be impossible.

5. The requirement was selectively applied only to Plaintiff and was motivated by her manager's desire to eliminate the administrative burden of Plaintiff's intermittent FMLA use.
6. This targeting and termination constitute adverse actions because of Plaintiff's disabilities.

## Count III – Retaliation (Title VII and ADA)

1. Plaintiff engaged in protected activity by disclosing her disabilities, requesting accommodations, and opposing discriminatory treatment.
2. Within weeks and months of her disclosures, Defendants took adverse actions, including:
   - Downgrading her Manager Ratings without cause.
   - Selective discipline under unattainable standards.
   - Obstructing her transfer by requiring new FMLA paperwork before proceeding.
3. The temporal proximity between protected activity and adverse action, combined with evidence of pretext (selective enforcement, concealment of system issues), establishes retaliation.

## Count IV – Failure to Accommodate (ADA)

1. Plaintiff requested accommodations in September 2022 related to her disabilities.
2. Her manager did not engage in the interactive process or offer FMLA until Plaintiff self-advocated in a termination meeting.
3. Once FMLA was approved, her manager discouraged its use, labeled it "a free bank of time off," and bullied Plaintiff out of renewing it in January 2023.
4. Defendants denied reasonable accommodations within the manager's discretion and blamed HR for these denials.
5. These actions violated the ADA's requirement to provide reasonable accommodations and to engage in the interactive process in good faith.

## Count V – FMLA Interference (29 U.S.C. § 2615(a)(1))

1. Plaintiff was approved for intermittent FMLA leave in October 2022.
2. Defendants interfered with her rights by:
    - Discouraging her from using leave.
    - Creating a hostile environment for its use.
    - Obstructing her transfer until she reapplied for FMLA.
3. Intermittent FMLA is protected by law, and Defendants' conduct denied Plaintiff the full benefit of that protection.

## Count VI – FMLA Retaliation (29 U.S.C. § 2615(a)(2))

1. Plaintiff engaged in protected activity by taking intermittent FMLA leave.
2. Shortly after and throughout its use, Defendants:
    - Targeted her with subjective Manager Ratings.
    - Isolated her for discipline based on unattainable performance standards.
    - Ultimately terminated her employment.
3. The close timing, selective enforcement, and concealment of favorable evidence demonstrate retaliatory intent.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(a) Enter judgment against Defendants for back pay, front pay, and lost benefits;

(b) Award compensatory and punitive damages;

(c) Award attorneys' fees and costs;

(d) Grant any other relief deemed just and proper.

## PRESERVATION OF EVIDENCE

Plaintiff hereby demands that Defendant take all reasonable steps to preserve all evidence relevant to this action, including but not limited to: all personnel files, HR records, performance evaluations, scorecards, internal and external emails, instant messages, manager notes, disciplinary records, FMLA paperwork, accommodation requests, meeting notes, system issue logs, call records, and all electronically stored information ("ESI") pertaining to Plaintiff's employment and termination. This demand includes, without limitation, communications between Plaintiff's managers, HR personnel, and SoFi's legal department concerning Plaintiff, her performance, her disability, FMLA use, or termination. Failure to preserve such evidence may result in sanctions for spoliation.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Jacqueline T. Floyd* 8/7/25

Jacqueline T. Floyd

1013 Amiens Way

Pensacola, FL 32505